MARION DILDAY, BERL B. RESPESS AND ROBERT E. MOORE v. BEAUFORT COUNTY BOARD OF EDUCATION, A BODY CORPORATE, AND THE INDIVIDUAL MEMBERS THEREOF: W. B. VOLIVA, CHAIRMAN; RALPH HODGES, JR., JASPER WARREN, CARMER WALLACE, W. L. GUILFORD, W. F. VEASEY, SECRETARY; AND BEAUFORT COUNTY COMMISSIONERS, CONSISTING OF: SAM MOORE, CHAIRMAN; CECIL LILLEY, JAKE VAN GYZEN, ALTON CAYTON, AND WALTON BROOME AND JAY M. HODGES, BEAUFORT COUNTY TREASURER AND AUDITOR.

(Filed 22 May 1968.)

**1. Counties § 6—**

G.S. 153-107 places no limitation upon the legal right to transfer or allocate funds from one project to another within the general purpose for which county bonds were issued, but it does prevent funds obtained for one general purpose from being transferred and used for another general purpose.

**2. Schools §§ 4, 7; Counties § 3—**

To effectuate a transfer of school bond funds from one project to an-

other, the county board of education must, by resolution, request such re-allocation and apprise the county commissioners of the conditions neces-sitating the transfer, and the board of county commissioners must then make an investigation and record their findings upon their official minutes, and authorize or reject the proposed reallocation.

**3. Schools § 7; Counties § 3—**

The board of county commissioners may reallocate school bond funds in accordance with a request of the county board of education upon finding (1) that conditions have so changed since the bonds were authorized that the funds are no longer necessary for the original purpose, or that the proposed new project will eliminate the necessity for the originally con-templated expenditure and better serve the district involved, or that the law will not permit the original purpose to be accomplished in the manner intended, and (2) that the total proposed expenditure for the changed purpose is not excessive.

**4. Same; Taxation § 12— County commissioners' approval of reallo-cation of county school bond funds held insufficient to dissolve tempo-rary restraining order.**

A school bond issue was approved by the voters prior to the enactment of the Civil Rights Act of 1964. The county board of education proposed to take funds from the bond issue which had been allocated for the im-provement of Negro high schools in the district and add them to the allo-cation for the consolidation of three schools attended exclusively by white pupils in order to build a central school for all high school pupils in the district, and thus integrate the high school in conformity with federal re-quirements. *Held:* Approval of the proposed reallocation by the county commissioners upon a general finding that "the total proposed expenditure for the changed purpose is not excessive" is insufficient to warrant the dis-solution of a temporary restraining order preventing the expenditure of funds for the revised purpose, it being necessary for proper approval that the board of county commissioners make positive and specific findings as to the buildings planned for the proposed school and the sufficiency of available funds for such construction.

HUSKINS, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Bundy, J.,* May 1967 Session of BEAUFORT, docketed and argued as No. 39 at Fall Term 1967.

At Spring Term 1966, in *Dilday v. Board of Education,* 267 N.C. 438, 148 S.E. 2d 513, this Court, on plaintiffs' appeal, reversed a judgment entered by His Honor, R. I. Mintz, at May 2, 1966 Civil Session of Beaufort Superior Court, which had dissolved a tempo-rary restraining order issued April 22, 1966, by His Honor, Joseph W. Parker, and reinstated Judge Parker's said order.

It was stipulated that the entire record on said former appeal "shall be part of the record of this case on appeal."

Reference is made to the preliminary statement and to the opin-ion of Sharp, J., in connection with our decision on former appeal,

for a full statement of the facts then before the Court. A brief review is set forth below.

On November 3, 1964, the voters of Beaufort County approved a county bond issue of $1,400,000.00 for school construction, of which $741,580.00 was allotted to the Beaufort County School Administrative Unit and $658,420.00 to the Washington City School Administrative Unit; and on the same day the voters of North Carolina, pursuant to Chapter 1079, Session Laws of 1963, approved a State bond issue of $100,000,000.00 for school construction, of which $475,-275.66 was allocable to the Beaufort County School Administrative Unit and $390,337.38 to the Washington City School Administrative Unit.

On September 11, 1964, the Beaufort County Board of Education (School Board) adopted a resolution showing the proposed allocations to specific building projects of the $1,216,855.66 to become available to the Beaufort County School Administrative Unit if the bond issues were approved. The allocations included: $780,000.00 for "Central High School on the North side of the River"; $105,000.00 for "Beaufort County High School, four classrooms, gymtorium, vocational shop"; and $90,000.00 for "Belhaven High School, four classrooms and assembly room." According to the proposed allocations, and the publicity incident thereto, prior to the bond elections on November 3, 1964, two high schools in the area, namely, the Beaufort County High School (at Pantego) and the Belhaven High School, then attended exclusively by Negro students, were to be continued, and a new consolidated school, "Central High School," was to be constructed and attended exclusively by white students who had previously attended Pantego High School, Bath High School and Wilkinson High School of Belhaven.

On April 20, 1965, to comply with Title VI of the Federal Civil Rights Act of 1964, the School Board departed from the pre-referendum allocation of September 11, 1964, in that, instead of consolidating only the three high schools for white students, it proposed to consolidate all of the five high schools in District III into one central high school; and on August 24, 1965, the School Board resolved "(t)hat the $105,000.00 allocated for additional construction at the Beaufort County High School and the $90,000.00 allocated to build additional facilities at the Belhaven High School be added to the allocation of the $780,000.00 previously planned for the construction for the central consolidated high school." On November 4, 1965, the State Board of Education approved the School Board's "School Improvement Program," which included the consolidation of all five high schools in District III.

On February 9, 1966, the School Board submitted to the Commissioners a resolution requesting their approval of the plan to omit the improvements originally intended for the Beaufort County and Belhaven high schools and to use these funds to finance an enlarged central high school with a capacity of nine hundred pupils instead of six hundred. The Commissioners, being advised by their attorney the School Board had sufficient authority to proceed without further action by the Commissioners, did not act upon the School Board's request. On March 8, 1966, the School Board, based upon recitals set forth therein, unanimously adopted a resolution that it proceed immediately with the "construction of a central high school on the site already purchased in the Yeatesville area for a high school plant of 900 or more students to replace the Bath High School, Beaufort County High School, Belhaven High School, John A. Wilkinson High School, and Pantego High School."

Judge Mintz held the construction of the planned central high school to replace the five schools was proper and valid and dissolved the temporary restraining order. In reversing the judgment of Judge Mintz, and in reinstating the temporary restraining order issued April 22, 1966, this Court stated: "Since defendant Board of County Commissioners has not acted upon defendant School Board's request that it approve a reallocation of the funds in question, the latter has no authority, acting alone, to make the reallocation. Until defendant Commissioners approve the request, defendant School Board may not proceed."

Our decision on former appeal was filed June 16, 1966. On July 5, 1966, the Commissioners, in their regular monthly meeting, deferred consideration of the School Board's said resolution and request until a special meeting to be held July 23, 1966. At their meeting on July 23, 1966, the Commissioners adopted unanimously resolutions summarized as follows: (1) The funds available were insufficient to permit the building of a high school sufficient to accommodate all students attending the five separate high schools now in operation on the north side of the Pamlico River; and (2) the construction of the proposed central high school could not be accomplished without further investigation since in at least two of the communities in which a discontinuance of the high school was proposed there was a prospect of population growth due to phosphate development. The record shows no further action until after the persons elected commissioners in November, 1966, took office.

When this action was instituted and when the former appeal was heard, the County Commissioners of Beaufort County (Commissioners) were the persons named as such in the caption, to wit: Sam

Moore, Chairman; Cecil Lilley; Jake Van Gyzen; Alton Cayton; and Walton Broome. The present Commissioners, who took office December 5, 1966, pursuant to the general election held in November, 1966, are: Jake Van Gyzen, who was elected chairman in January, 1967; Alton Cayton; Walton Broome; J. A. Hackney, Jr.; and W. H. Page. The record does not disclose any change in the membership of the School Board or in the official status of defendants Veasey and Hodges.

On December 21, 1966, the School Board, all members being present and voting therefor, adopted a resolution providing, after recitals, "that the request be re-submitted to the Board of County Commissioners of Beaufort County to approve the reallocation of $105,000.00 originally planned for construction at the Beaufort County High School and $90,000.00 originally planned for construction at the Belhaven High School to the cost of constructing the proposed central high school."

At their meeting on January 3, 1967, after consideration of the School Board's said request, the Commissioners appointed a committee, consisting of James A. Hackney, Jr., and of Jake Van Gyzen, "to make a study and investigation of the entire matter." An unsigned report, *submitted* by Mr. Hackney and referred to as the Hackney report, was filed.

There appears in the record a certified copy of a resolution adopted by the Commissioners on March 6, 1967, quoted in full below.

"The Board finding as a fact, after an investigation, that it is to the best interest of the citizens of Beaufort County that $195,000 be transferred in accordance with the request of the Beaufort County Board of Education from Beaufort County High School and Belhaven High School, to the construction of the proposed consolidated school. Upon motion of James A. Hackney, Jr., seconded by William H. Page, it is resolved that the County Commissioners reallocate the funds as requested by the County School Board.

| Voting For | Voting Against |
|---|---|
| James A. Hackney, Jr. | Alton Cayton |
| William H. Page | |
| Abstaining: W. A. Broome | |

"The chairman then ruled that the motion carries, and it is so ordered."

There also appears in the record a certified copy of a resolution adopted by the Commissioners on April 3, 1967, quoted in full below.

"The Board of Commissioners of Beaufort County, after investigation, find the following facts:

"(1)  That since the school bonds were authorized by the Board of Commissioners that conditions have so changed that certain of the funds are no longer necessary for the original purpose, and that a transfer of $105,000.00 from Beaufort County High School and $90,-000 from Belhaven High School to the central high school on the North side of the river will better serve the educational interests of that district of Beaufort County, and the Board further finds that the law will not permit the original purpose to be accomplished in the manner intended, and

"(2)  That the total proposed expenditure for the changed purpose is not excessive but is necessary in order to maintain the constitutional school term, and

"(3)  In accordance with the opinion of the N. C. Supreme Court in the case of *Marion Dilday, et al., v. Beaufort County Board of Education, et al.,* it is therefore resolved:

"That the sum of $105,000 originally intended for improvements to Beaufort County High School and the sum of $90,000 originally intended for improvements to Belhaven High School be and the same is hereby reallocated toward the construction of the central high school on the North side of the river, and such sums are hereby added to the $780,000 originally allocated for the construction of the central high school.

"Motion for the adoption of the foregoing resolution was made by J. A. Hackney, Jr., seconded by William H. Page.

*Voting For:*

J. A. Hackney, Jr.
William H. Page
Jake Van Gyzen

*Voting Against:*

Alton Cayton
W. A. Broome."

On April 11, 1967, defendants filed a motion that said temporary restraining order signed by Judge Parker on April 22, 1966, be vacated. The hearing before Judge Bundy was on defendants' said motion to vacate.

On April 28, 1967, pursuant to an order of the clerk and without objection by defendants, counsel for plaintiffs conducted adverse examinations of defendants Van Gyzen, Voliva and Veasey.

Although the record is silent with reference thereto, defendants, in their brief, assert *they* offered in evidence (1) the School Board's resolution of December 21, 1966, (2) the Hackney report, and (3)

the Commissioners' resolutions of March 6, 1967, and of April 3, 1967. All other evidence in the record, including transcripts of the adverse examinations of Van Gyzen, Voliva and Veasey, and affidavits of Alton Cayton, W. A. Blount, Jr., Dr. W. T. Ralph and Walter F. Canady, was offered in evidence by plaintiffs and received in evidence without objection.

Apart from said motion to vacate, *no pleading has been filed by any defendant.*

Judge Bundy entered judgment in which, after recitals and extensive findings of particular facts, this final (seventeenth) finding of fact was made, to wit: "That the action of the Board of Commissioners in undertaking to approve the reallocation of funds without making a proper and thorough investigation of the financial aspects of such reallocation constitutes an abuse of discretion vested in them as public officers." Whereupon judgment was entered as follows:

"WHEREFORE, upon the above findings of fact and upon a consideration of the whole record, the Court concludes as a matter of law that the resolution adopted at the March meeting of the Board of County Commissioners of Beaufort County and supported by the so-called finding of facts adopted one month later at the April meeting of the Board forms no sufficient basis for the lifting of the restraining order heretofore entered in this cause. The motion of the defendants that such restraining order be lifted is therefore denied."

Defendants entered twelve exceptions. Nine are addressed to specific findings of fact made by Judge Bundy. Exceptions 10, 11 and 12 are directed generally to the court's legal conclusion and the signing of the judgment. Defendants' gave notice of appeal in open court.

*John A. Wilkinson for plaintiff appellees.*

*W. P. Mayo for defendant Beaufort County Board of Education, appellants.*

*L. H. Ross for defendant Beaufort County Board of Commissioners, appellants.*

*Attorney General Bruton and Deputy Attorney General Moody for the State, amicus curiæ.*

BOBBITT, J. Reference is made to the opinion of Sharp, J., on former appeal, for a full statement, in accordance with statutes and decisions cited, as to the respective functions and responsibilities of the School Board and the Commissioners in providing for the educational needs of the children of the county. Specific reference is made to G.S. 153-107 which, as construed in *Atkins v. McAden,* 229 N.C. 752, 756, 51 S.E. 2d 484, 487, "does not place a limitation upon the

legal right to transfer or allocate funds from one project to another included within *the general purpose* for which bonds were issued," (our italics) but does prevent the transfer and use of funds obtained for one *general* purpose for another *general* purpose.

The opinion on former appeal sets forth that, to effectuate a transfer of funds from one project to another certain facts must appear, and certain preliminary steps must be taken, *viz.:* (1) The School Board must, by resolution, request the reallocation of funds and apprise the Commissioners of the conditions which bring about the need for the transfer; (2) the Commissioners must then investigate the facts upon which the School Board's request is based; and (3) the Commissioners, after making their investigation, "must, by resolution, record their findings upon their official minutes and authorize or reject the proposed reallocation of funds." The opinion then gives the explicit directive quoted in the following paragraph.

"If the commissioners find (1) that, since the bonds were authorized, conditions have so changed that the funds are no longer necessary for the original purpose, or that the proposed new project will eliminate the necessity for the originally-contemplated expenditure and better serve the educational interests of the district involved, or that *the law will not permit the original purpose to be accomplished in the manner intended,* and (2) *that the total proposed expenditure for the changed purpose is not excessive,* but is necessary in order to maintain the constitutional school term, the commissioners may then legally reallocate the funds in accordance with the request from the board of education. *Without such affirmative findings, however, the commissioners have no authority to transfer funds previously allocated to another purpose.* And, without authority from the commissioners, the county board of education itself has no power to reallocate the funds." (Our italics.)

The School Board's original proposal, publicized prior to the bond elections of November 3, 1964, was to spend $780,000.00 to construct a new consolidated school, "Central High School," exclusively for *white* students who had previously attended Pantego High School, Bath High School and Wilkinson High School of Belhaven. After said election, it became manifest, as set forth in opinion on former appeal, that the School Board could "no longer legally impose segregation of the races in any school." Thus, the original proposal could not be lawfully accomplished in the manner intended.

The School Board then proposed to consolidate all of the five high schools in District III, to wit, Pantego High School, Bath High School, Wilkinson High School of Belhaven, Beaufort County High School at Pantego and Belhaven High School, into one central high

school, to be located on a site in the Yeatesville area. The School
Board requested the Commissioners to approve the reallocation of
the $105,000.00 originally designated for construction at the Beau-
fort County High School at Pantego and of the $90,000.00 originally
designated for construction at the Belhaven High School for use, to-
gether with the $780,000.00 originally designated for the construction
of a central high school for all students theretofore attending the
five high schools in District III.

The failure of the Commissioners to act on the School Board's
said request, and the necessity for such action by the Commissioners
before reallocations could be made, were considered fully on former
appeal.

The Commissioners who had refused to act on the School Board's
said request were in office at the time of our decision on former ap-
peal. In their resolution of July 23, 1966, adopted unanimously, they
determined, *inter alia,* that funds were not available to permit the
building of a high school sufficient to accommodate all the students
then attending the five separate high schools in District III. Defend-
ants did not except to Judge Bundy's finding of fact that "(t)he un-
disputed evidence shows that this action was concurred in by the
defendant Board of Education."

Three of the five Commissioners who participated in said determ-
ination of July 23, 1966, namely, Van Gyzen, Cayton and Broome,
were re-elected. Cayton and Broome adhered to said determinations
of July 23, 1966. The affidavit of Cayton sets forth the facts on
which he based his opinion. Van Gyzen, who had voted for said reso-
lution of July 23, 1966, joined with the two new members, Hackney
and Page, in adopting in 1967 the vague and anemic resolutions on
which defendants based their motion to vacate the temporary re-
straining order issued April 22, 1966.

It was the duty of the Commissioners, in passing upon the School
Board's resubmitted request, to investigate the matter sufficiently to
determine all pertinent facts and to base their decision on their de-
clared factual findings. Since the primary ground on which Judge
Bundy refused to vacate the temporary restraining order was that
"the action of the Board of Commissioners in undertaking to approve
the reallocation of funds without making a proper and thorough in-
vestigation of the *financial* aspects of such allocation" constituted
"an abuse of discretion vested in them as public officers," we deem
it appropriate to deal specifically with this feature of the case. (Our
italics.)

The School Board's resolution of December 21, 1966, contains no
reference to plans for or cost of the central high school then pro-

posed. The Commissioners' resolution of April 3, 1967, contains a general finding that "the total proposed expenditure for the changed purpose is not excessive," but contains no specific findings bearing upon what building or buildings were planned for the proposed central high school or upon whether the cost thereof would exceed available funds.

The Hackney report contains no factual statements bearing upon the cost of the proposed central high school.

Mr. Van Gyzen testified under adverse examination he did not "have the vaguest idea of the cost of this proposed school."

There was evidence to the effect that the cost of a central high school to accommodate 900-1,000 students would cost as much as $1,800,000.00. It would seem Judge Bundy took a conservative view of the evidence as to costs when he made the following findings of fact, to wit:

"13. An examination of the testimony of W. B. Voliva, Chairman of the Beaufort County Board of Education, and that of W. F. Veasey, Superintendent of the Beaufort County Schools . . ., discloses that the amount of money available for the construction consisted of the $780,000 originally allocated for the construction of a three-school consolidated high school housing between 500 and 600 students and an additional $195,000 originally contemplated to be spent at the Beaufort County High School in Pantego and the Belhaven High School in Belhaven, both of which are Union Schools serving largely Negro students from grades 1 through 12. The evidence of both the Chairman and the Secretary of the School Board discloses that neither of these schools presently have a gymnasium nor an auditorium. The testimony of the Chairman, W. B. Voliva, discloses that the student body of the Belhaven School, both high school and elementary students, use a nearby church as an auditorium. The evidence further discloses that the Board of Education, after having requested that the $195,000 allotted to these two schools be transferred to the central school project, further requested the County Commissioners at the January 1967 meeting to allocate additional funds for a part, at least, of the very purposes originally contemplated at these schools. The evidence discloses that this request was denied by the Commissioners on the grounds of a lack of available funds. The only evidence bearing even indirectly upon the probable cost of the school was furnished by the Chairman of the Board of Education, Mr. Voliva, who testified that it was his opinion that the probable cost would be $1,300 per student and that the original figure of $780,000 was arrived at by multiplying the estimated number of students that would attend the three-school consolidated high

school by such figure. The Court finds that the estimate of a probable attendance at a five-school consolidated high school is between 900 and 1,000 students. If these figures are correct, then the cost of the school would be between $1,170,000 and $1,300,000. If Mr. Voliva's figures concerning the matter of money available are correct, the maximum amount after the transfer of funds allocated to the construction and repair at the two Union schools serving largely Negro children would be approximately $975,000. Therefore, the only evidence, sketchy as it is, tends to disclose that the cost of the building is excessive in relation to the funds available and that the building cannot be built with presently available funds. The Court does not find this as a fact because the evidence is too sketchy to support any conclusion concerning it, but it does find as a fact that there is nothing in the record that would have supported a conclusion by the County Board of Commissioners that the total proposed expenditures for the changed purpose is not excessive or, indeed, that it could presently be accomplished.

"14. Further examination of the testimony of Mr. Voliva and Mr. Veasey discloses that no other firm plans have yet been made by the Beaufort County Board of Education concerning the size of the proposed high school. As the over-all record in this matter discloses, it was originally intended to build a high school to accommodate students from three high schools, the John A. Wilkinson High School in Belhaven, Pantego High School and Bath High School. The record further discloses that these schools largely served white children, but all had some Negro students at the beginning of the 1965-66 school year and all still have such students. The over-all record further discloses that the North Carolina Board of Education brought about a change of plan and that the school authorities in Raleigh directed that the consolidated high school be enlarged to accommodate the students of the Belhaven High School and the Beaufort County High School at Pantego, both of which largely served Negro students. It was contemplated that those two high schools would be discontinued and a resolution was adopted abolishing their high school districts. The testimony of Mr. Voliva and Mr. Veasey now discloses the likelihood that the high school department of one or both of these schools will be retained. The size of the resulting consolidated school has not been determined either in the number of students or the amount of construction contemplated. Attention is invited to the testimony of the witnesses Voliva and Veasey, who said that, under existing conditions, such a determination could not now be reached. This evidence is unchallenged and uncontradicted. The Court therefore finds as a fact that the size and, consequently,

the cost of the school proposed to be constructed is presently undetermined and unknown."

The findings of fact to which defendants excepted, including those quoted above, are amply supported by the evidence. The Commissioners made no finding and the evidence would not support a finding that a central high school sufficient to accommodate all students in District III could be built with funds presently available for that purpose. Hence, the conclusion reached is that the evidence was insufficient to compel or warrant dissolution of the temporary restraining order.

If defendants seek to proceed with the construction of a consolidated (five high schools) central high school, they must make positive and specific factual findings with reference to the building(s) for the proposed central high school *and* with reference to the sufficiency of available funds for construction thereof.

As indicated above, defendants have not filed answers. The only question before us is whether Judge Bundy erred in denying defendants' motion to vacate the temporary restraining order. We hold that he did not. Hence, the order entered by Judge Bundy is affirmed.

Affirmed.

HUSKINS, J., took no part in the consideration or decision of this case.